Teresa TAGLIENTE, Trustee of
the Tagliente Family Trust,
Plaintiff, Appellant,

v.

David C. HIMMER, Defendant, Appellee.

No. 91–1450.

United States Court of Appeals,
First Circuit.

Heard Sept. 9, 1991.

Decided Nov. 13, 1991.

Kevin J. O'Connor, with whom Philip M. Cronin and Peabody & Arnold, Boston, Mass., were on brief for plaintiff, appellant.

William H. Clancy, with whom Thomas D. Burns, Anne E. Sargeant, Joseph A. Hearst and Burns & Levinson, Boston, Mass., were on brief for defendant, appellee.

Before TORRUELLA, Circuit Judge, and COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

TORRUELLA, Circuit Judge.

This appeal arises from an action brought by Teresa Tagliente ("Tagliente"), trustee of the Tagliente family, charging David C. Himmer with fraudulent misrepresentation, and unfair and deceptive acts and practices in violation of Mass.Gen.L. ch. 93A. The fraudulent misrepresentations relate to the sale of a parcel of land located in Methuen, Massachusetts, to Tagliente on July 31, 1986. The United States District Court for the District of Massachusetts granted appellee's motion for summary judgment on the fraudulent misrepresentation claim on the basis that the appellant's claim was time barred. That court also granted summary judgment on the chapter 93A claim finding insufficient evidence to support such action. We affirm.

I. FACTS

Appellant and appellee entered into an agreement on or about May 16, 1986 for the exchange of 10½ acres of land located at the intersection of Interstate 495, Route 113 and Route 213, 143 Pleasant Valley Street, Methuen, Massachusetts. The appellant was represented by her husband, Joseph Tagliente, during all of the transactions in question.

Joseph Tagliente is the President of the Tage Corporation. In that capacity, he has participated in the purchase, sale, and de-

velopment of several pieces of property on behalf of the Tage Corporation. He was familiar with the process of developing property, including the use of architect's drawings, as well as, engineering and topographical studies. Moreover, Mr. Tagliente was familiar with wetlands, since he had developed a Burger King in Milford, Massachusetts on a wetlands site. In that project Mr. Tagliente had helped to select the site, obtain the necessary permits, and obtain a topographical survey for the project. Joseph Tagliente learned of the Methuen property through his real estate agent in April, 1986. Himmer, together with architect Brian Libby, created a brochure describing the property prior to placing it on the market. The brochure included a color aerial photograph of the property, facts about the property and maps of the surrounding area. In addition, the brochure included two architectural drawings of proposed design schemes depicting ideas for development of the property for office or industrial use. The page was entitled "Proposed Design Schemes" and indicated that: "All these items should be tested by the individual user and presented to the Town of Methuen for their review and approval." Himmer distributed the brochure and told people that he was interested in selling the property.

Joseph Tagliente, his real estate agent, and the defendant had walked the property together prior to the sale. The purchase and sale agreement was drafted by appellant's attorney. In connection with the transaction, said attorney wrote to the Town of Methuen to obtain copies of zoning maps, by-laws and ordinances, Planning Board regulations and Conservation Commission regulations. The May 16, 1986 agreement gave appellant the right to have engineers or inspectors inspect the property on her behalf, and, pursuant to Article III, gave appellant and her contractors a right of reasonable access to the property. The agreement also provided that the property was to be "conveyed to the appellant by a good and sufficient Quitclaim Deed" and "that said Deed shall convey a good and clear record and marketable title thereto, free from encumbrance, except: A. Zoning regulations and ordinances of any governmental body having jurisdiction over the premises."

Article XIII of the May 16, 1986 agreement provided that the agreement "... is to take effect as a sealed instrument, [and] sets forth the entire contract between the parties, is binding upon and inures to the benefit of the parties hereto, their respective heirs, devises, executors, administrators, successors and assigns, and may be cancelled, modified or amended only by a written instrument executed by the parties hereto."

Appellant purchased the property for the purpose of building a hotel and/or a restaurant. No steps were taken to investigate or develop the property until mid–1988 because she was involved with the development of another site. When appellant began the development of this property in mid–1988, she decided the property was not suitable for a hotel because of its lack of visibility and accessibility. Attempts to sell the property were unsuccessful and an engineer was retained for the first time to perform tests and prepare a report on the use of the land for alternative purposes. These efforts also failed as the engineer concluded in 1988 that only 4.4 acres of the property were buildable.

A complaint was filed on March 9, 1990 in Suffolk Superior Court. It alleges four representations by the appellee which were false and upon which the plaintiff's husband relied. The misrepresentations were as follows:

(1) The extent of the water and wetlands present on the property would satisfy the open space requirements of local zoning laws and would not reduce in any way the buildable area of the property;

(2) The property had not been previously marketed for sale by Himmer;

(3) The property would have great access to and visibility from major highways, including Interstate Route 495; and

(4) There were other buyers ready and willing to pay more than the agreed upon $1.1 million purchase price.

**4**

## II. STANDARD OF REVIEW

Summary judgment is proper when there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We consider the undisputed facts in the light most favorable to the nonmovant. *See, e.g., Kennedy v. Josephthal & Co., Inc.,* 814 F.2d 798, 804 (1st Cir.1987). Our review of legal decisions is plenary.

## III. LEGAL ANALYSIS

■ An action for fraudulent misrepresentation of material facts in a transaction is an action sounding in tort. *Kent v. Dupree,* 13 Mass.App. 44, 429 N.E.2d 1041, 1043 (1982). According to Mass.Gen.L. ch. 260, § 2A, "actions of tort ... shall be commenced only within three years next after the cause of action accrues." We must determine whether the undisputed facts are sufficient to hold, as a matter of law, that the appellant's action is barred by the applicable statute of limitations.

■ Generally, an action in tort accrues at the time of the plaintiff's injury, *Joseph A. Fortin Const., Inc. v. Massachusetts Housing Finance Agency,* 392 Mass. 440, 442, 466 N.E.2d 514, 516 (1984), in this case at the time of the sale, July 31, 1986. Plaintiff filed her complaint on March 9, 1990, three years and seven months after she purchased the property. Therefore, according to the statute of limitations provision cited above, the plaintiff's action is time barred.

A statute of limitations legislatively established will not be easily overlooked. As the United States Supreme Court has stated a number of times, statutes of limitations represent "a judgment that it is unjust to fail to put an adversary on notice to defend within a specified period of time and the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979) (citing *Order of RailRoad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)). In *Kubrick* the Court continued:

These statutes are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

*Id.* Essentially, fairness to the defendant, and sound judicial administration require that at some point litigation over a particular controversy must stop. *See* Restatement (Second) of Judgments § 19, comment (a), at 161–62.

■ Nevertheless, the jurisprudence has recognized an exception to the general rule established by the statute of limitations in actions which fall under the so called "discovery rule." *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Under this rule, the action accrues when the injured party knew or, **in the exercise of reasonable diligence, should have known,** the factual basis for the cause of action. *Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 130 (1st Cir.1987). The standard set forth by the discovery rule is an objective one. The action accrues when the injured party "reasonably should have known the factual basis for the cause of the action." In order for the statute of limitations to be tolled pursuant to the discovery rule, the factual basis for the cause of action must have been "inherently unknowable" at the time of the injury. *See, e.g., Fidler v. Eastman Kodak Co.,* 714 F.2d 192 (1st Cir.1983); *Levin v. Berley,* 728 F.2d 551, 553 (1st Cir.1984).

■ Appellant claims that the principles established by the discovery rule warrant a delayed accrual in this case since she did not have knowledge of the appellee's fraudulent misrepresentations until some time in 1988. Hence, we must determine whether there is any genuine factual dispute that the appellant knew, or in the exercise of reasonable diligence should have known

that the appellee's representations were false at the time of the sale. The burden is on the plaintiff to prove that in the exercise of reasonable diligence she could not have known of the misrepresentation within the statute of limitations. *Friedman v. Jablonski,* 371 Mass. 482, 485–87, 358 N.E.2d 994, 997–98 (1976). In light of the above discussed standard we find that the record demonstrates without genuine dispute that the appellant has not met this burden.

A wrong can be "inherently unknowable" if it is "incapable of detection by the wronged party through the exercise of reasonable diligence." *Borden v. Paul Revere Life Ins. Co.,* 935 F.2d 370, 376 (1st Cir.1991). Appellant claims that prior to her purchase of the property, Himmer made various misrepresentations regarding the property itself and the circumstances surrounding its marketing and sale to Joseph P. Tagliente, the representative of appellant with respect to this transaction. As far as the last three misrepresentations, we find no merit to appellant's claim that they were "inherently unknowable." These three misrepresentations consist of the following:

(2) The property had not been previously marketed for sale by Himmer;

(3) The property would have great access to and visibility from major highways, including Interstate Route 495; and

(4) There were other buyers ready and willing to pay more than the agreed upon $1.1 million purchase price.

A simple drive along the Interstate Route 495 would have sufficed to verify Mr. Himmer's statement regarding the visibility and accessibility of the land. Furthermore, it is not uncommon practice among real estate sellers, and indeed among sellers in general, to boast, and exaggerate the demand for their goods, or the unique value of it. We cannot find that an experienced real estate developer would have relied on such assertions without making an effort to investigate further. Indeed, when the plaintiff finally investigated further in 1988, she certainly learned that the parcel of land had been marketed before with no great success, indicating that there were not many buyers standing by ready to purchase.

Moreover, as the district court stated, the contract contained no warranty of visibility or accessibility. In the absence of such warranty we cannot find that these misrepresentations constituted inherently unknowable facts, or facts incapable of detection through reasonable diligence. Indeed, Mr. Tagliente became aware of the actual extent of the land's accessibility and visibility as soon as he began to develop the land in mid–1988. Nothing impeded his learning of the misrepresentations before or at the time of the sale, except the lack of due diligence on his part. Thus, we find that none of the above cited misrepresentations were inherently unknowable.

The first misrepresentation also does not constitute an inherently unknowable wrong. That misrepresentation reads as follows:

(1) The extent of the water and wetlands present on the property would satisfy the open space requirements of local zoning laws and would not reduce in any way the buildable area of the property;

Through reasonable diligence Mr. Tagliente could have learned the correct amount of water on the land as well as the extent to which the presence of wetlands would impede construction on the land. The record shows without dispute that Mr. Tagliente had dealt with wetlands before, and was aware of the regulations to which these types of terrains are subject. The appellant, by the time the parties entered into a sale agreement on May 16, 1986, had the right to have engineers or inspectors inspect the property on her behalf, and, pursuant to Article III, her contractors had a right to have reasonable access to the property. As stated by the district court, at the very least by the time appellant accepted the deed on July 31, 1986, she had the unrestricted opportunity to inspect the land, conduct surveys, secure topographical studies, and study the regulations governing use and conservation in Methuen.

Furthermore, appellant was assisted by an experienced real estate agent familiar with her husband's business, and was rep-

resented by an attorney who drafted the agreement and pursued information from the town which would have guided her in the acceptable development of the land. All regulations and zoning ordinances were a matter of public record available to the appellant.

Finally, the sale agreement drawn between the parties stated that the property was to be "conveyed to the plaintiff by a good and sufficient Quitclaim Deed" and "that said Deed shall convey a good and clear record and marketable title thereto, free from encumbrance, **except: A. Zoning regulations and ordinances of any governmental body having jurisdiction over the premises ...**" Surely then, appellant was aware of the regulation of wetlands by the government, and their ultimate authority as to the proper use of such land. We cannot find anything inherently unknowable about the land, or at the very least anything that the appellant could not have learned through reasonable diligence.

As stated by the district court, by waiting over two years to look at the site and then, after attempting to re-sell it, by waiting almost two more years to file this suit, appellant has lost the right to pursue these claims. These claims accrued at least at the time the appellant accepted the deed on July 31, 1986. The facts of this case do not warrant the tolling of the applicable statute of limitations by applying the discovery rule. Since this claim was filed over three years after the date of the purchase of the property, it is time-barred.

 Appellant further asserts that the statute of limitations is tolled by Mass. Gen.L. ch. 260, § 12 which provides:

> If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person

entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action.

As used in ch. 260 § 12, fraudulent concealment means that the defendant took some positive step to hide the plaintiff's cause of action. *Quigley v. Unum Life Ins. Co.*, 688 F.Supp. 80, 83–84 (D.Mass.1988). It should be noted that "mere silence is not a fraudulent concealment ... there must be something in the nature of positive acts with intent to deceive." *Lynch v. Signal Finance Co. of Quincy*, 367 Mass. 503, 507, 327 N.E.2d 732, 735 (1975). There is no evidence here that Himmer took any positive steps to effectively conceal from plaintiff any cause of action that might have accrued. The maps contained in the sale brochure were not topographical drawings, but proposed building plans. Given that appellant was represented by her husband, an experienced real estate developer, we cannot find that she could have reasonably relied on said information. Furthermore, appellant had access to the property at least from the time of the May 16 agreement. From these facts, no reasonable jury could have found that the defendant fraudulently concealed the extent of wetlands in the property in question. We find no reason to toll the applicable statute of limitations. This claim is, thus, time-barred.[1]

While the plaintiff's chapter 93A claim was timely filed, the district court found insufficient evidence to sustain such action and granted defendant summary judgment.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrog-

---

1. While the question of when a plaintiff knew, or reasonably should have known of his cause of action is one of fact which in most instances will be decided by the trier of fact, *Riley v. Presnell*, 409 Mass. 239, 240, 565 N.E.2d 780, 783 (1991), the United States Supreme Court has reiterated a number of times: "Nor are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a charac-

ter that it would warrant the jury in finding a verdict in favor of that party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1985); *Coughran v. Bigelow*, 164 U.S. 301, 307, 17 S.Ct. 117, 119, 41 L.Ed. 442 (1896); *Pennsylvania R. Co. v. Chamberlain*, 288 U.S. 333, 343, 53 S.Ct. 391, 394, 77 L.Ed. 819 (1933). "If the evidence is merely colorable, or it is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511.

atories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1985). Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

██ Chapter 93A § 2(a) provides:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

An act is "deceptive" under chapter 93A "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Lowell Gas Co. v. Attorney General*, 377 Mass. 37, 51, 385 N.E.2d 240, 249 (1979); *Purity Supreme, Inc. v. Attorney General*, 380 Mass. 762, 777, 407 N.E.2d 297 (1980).[2] In *Quaker State Oil Refining Corp. v. Garrity Oil Co. Inc.*, 884 F.2d 1510, 1513 (1st Cir.1989), this court reiterated the standard developed in litigation brought under chapter 93A, known as the "rascality standard," which states that " '[t]he objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.' " (citing *Levings v. Forbes & Wallace, Inc.*, 8 Mass.App.Ct. 498, 396 N.E.2d 149, 153 (1979)). This court added in *Quaker State* that the party bringing a chapter 93A action must establish "that the defendant's actions fell 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness,' or were 'immoral, unethical, oppressive or unscrupulous,' and resulted in 'substantial injury ... to competitors or other businessmen.' " *Id., see supra* n. 1.

██ Here, we find the record shows, without meaningful dispute, that the defendant committed no acts so misleading or deceptive to warrant recovery for appellant under chapter 93A. As already stated above, a claim will not survive summary judgment without "some evidence of such character that it would warrant the jury in finding a verdict in favor of that party." We believe a reasonable jury could not find the misrepresentations alleged by appellant to be so deceptive as to rise to the level of rascality required to establish a chapter 93A claim. The fact that Himmer told appellant that the property had not been previously marketed for sale, and that there were other buyers ready and willing to pay more than the agreed upon $1.1 million purchase price are basically traits of the trade and failed to "raise the eyebrows" of this court. We fail to see how they could have raised the eyebrows of an experienced real estate developer, "inured to the rough and tumble of the world of commerce."

As far as the extent of water and wetlands present on the property, appellant knew of the existence of water and wetlands on the property throughout the transaction and said fact could have been easily verified. Moreover, the sale agreement drawn up by appellant and appellee stated

---

**2.** Section 2 of the Massachusetts unfair trade practices statute states:

(b) It is the intent of the legislature that in construing paragraph (a) of this section ..., the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

(c) The attorney general may make rules and regulations interpreting the provisions of subsection 2(a) of this chapter. Such rules and regulations shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15 U.S.C. 45(a)(1) (the Federal Trade Commission Act), as from time to time amended.

A Massachusetts regulation pertaining to chapter 93A states that without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of Mass.Gen.L. ch. 93A, § 2 if:

(2) Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction ... Mass.Regs.Code tit. 940, § 3.16(2).

that the property was to be "conveyed to the plaintiff by a good and sufficient Quitclaim Deed" and "that said Deed shall convey a good and clear record and marketable title thereto, free from encumbrance, **except: A. Zoning regulations and ordinances of any governmental body having jurisdiction over the premises ...**" Thus, appellant was aware of the regulation of wetlands by the government, and their ultimate authority as to the proper use of such land.

Finally, the last alleged misrepresentation constitutes nothing more than an opinion on the part of the seller, and it is clear from established precedent that a false statement of opinion cannot constitute a "deceptive act" under chapter 93A. *Chedd–Angier Production Co. Inc. v. Omni Publications Intern Ltd.*, 756 F.2d 930, 939 (1st Cir.1985). The extent of the accessibility and visibility of the parcel of land from the nearby highway was an easily attainable fact. A mere drive past the designated area would have satisfied plaintiff's curiosity as to the lot's visibility and accessibility.

In light of the above recounted facts we find them insufficient to support a claim under Mass.Gen.L. ch. 93A. The district court's decision is *affirmed*.