Fremont-Smith, J.
The plaintiff, Kathleen Hartong, as Trustee of J&J Realty Trust,[1] commenced this action on February 21, 1991 against the defendant owners or operators of nearby gasoline stations, in connection with alleged contamination of real estate which the Trust purchased on June 30, 1986 in Woburn, Massachusetts as a commercial investment. The purchase price for the two-story building was $299,000. On or about October 13, 1988, the Trust entered into a purchase and sale agreement with a prospective buyer to sell the site for $310,000, but the sale fell through when a site assessment done for the prospective buyer revealed substantial soil and groundwater contamination on the property.
Although suit was filed within three years of plaintiffs 1988 discovery of the contamination, defendant has moved for summary judgment on plaintiffs G.L.c. 2 IE and related tort counts, which seek damages for diminution in the value of plaintiffs property as a result of the contamination.
UNDISPUTED FACTS
It is not disputed that, long before the plaintiff purchased the property in 1986, a number of releases *62 of contaminants had occurred from underground storage tanks located at gasoline stations which had been operated at some or all of the defendants’ properties, located within 100 feet of the plaintiffs property. Indeed, between December 1980 and October 1981, trenches had been dug, test wells bored, and recovery wells drilled and operated at various locations on defendants’ sites. At that time, prior to plaintiffs purchase, two underground storage tanks had been removed and thousands of gallons of gasoline recovered from the neighboring properties. In addition to the visible excavation and engineering work done in the neighborhood in those earlier years, there had been published accounts thereof in the local newspapers. Although the plaintiff had no prior commercial real estate experience, at least one of the physicians visited the property on more than one occasion and drove around the neighborhood prior to the Trust’s purchase of the property. They also had an Appraisal Report done by a competent Realtor, wherein it was stated in two separate places that no environmental study had been done and that the appraisal assumed that no contamination existed at the site.
Lynn Sallee was the real estate person who presented the site to the Trust for its consideration. Although the Trust did not pay any fee or commission to Sallee or enter into a brokerage agreement with him, Sallee did ask Carol Jones, who was the listing broker for the site, whether there was an environmental study on the property. Ms. Jones in turn asked the seller, who replied that no environmental site assessment had been done, but that the potential purchaser (the Trust) could have one done if they desired to do so. Ms. Jones reported this information back to Sallee. However, plaintiff caused no environmental study to be performed prior to its purchase of the property.
DISCUSSION
A moving party is entitled to summary judgment as a matter of law where there are no material facts in dispute, i.e., facts upon which a jury could reasonably decide the issue in favor of the nonmoving party. This is true with respect to the statute of limitations defense where there is no dispute as to essential evidentiary facts controlling the application of the discovery rule. Catrone v. Thoroughbred Racing Associations of North America, 929 F.2d 881 (1st Cir. 1991), citing Fidler v. E.M. Procker Co., 394 Mass. 534 (1985).
Here, the defendant asserts that, since there is no evidence that any releases from underground storage tanks of the defendants occurred subsequent to plaintiffs 1986 purchase of the property, the injury to the value of plaintiffs real estate had been suffered, and the action had accrued at the time of purchase (1986), so that any action for recovery of damages was therefore barred when it was filed in 1991.
Plaintiff counters that, even if this be true, there is sworn testimony that the contamination has continued to migrate in the groundwater from defendants’ properties onto the plaintiffs property up to and continuing to the present time, so that there is a “continuing tort.”
There are, indeed, several Superior Court decisions which have so held. See, e.g., “Memorandum of Decision and Order on Defendant Cambridge Savings Bank Motion for Summary Judgment on All Counts/Claims” in John Nestor, Trustee of Shannon Development Trust v. Haley & Aldrich, Inc., and others, Civil Action No. 90-3618 (February 3, 1992).
I am unpersuaded, however, that this is an appropriate application of the “continuing trespass” rule. Since contaminated groundwater frequently continues to migrate in groundwater for many years, if not for decades, such an application of the “continuing trespass” rule would effectually defeat the purpose of the statute of limitations, with the result that in environmental cases, “there seldom would be a prescribed and predictable period of time after which a claim would be barred.” Olsen v. Bell Telephone Laboratories, Inc., 388 Mass. 171, 175 (1983).
Nor am I persuaded that such a result is required by the decisions of the Supreme Judicial Court. In Sixty-eight Devonshire, Inc. v. Shapiro, 348 Mass. 177 (1964), the Supreme Judicial Court rejected just such an argument on analogous facts. There, a broken downspout on defendant’s building continually discharged water, ice and snow into the plaintiffs property. The Court stated that the statute would be tolled, but only because “damage to the plaintiffs building caused by the discharge of water from the defective gutter was a recurring event which continued down to the time the action was brought.” Id. at 184. See also Ahern v. Warner, 16 Mass.App.Ct. 223 (1983), where the Court affirmed the principle that the statute will be tolled only where a distinct act causing renewed injury has occurred within the period of limitations.
Although the precise point seems to have been rarely addressed in reported environmental decisions, in Merry v. Westinghouse Electric Corp., 684 F.Supp. 852 (M.D. Pa. 1988) the court rejected plaintiffs argument that the statute was tolled because defendant’s injury, caused by migration of contaminants, was of a continuing nature, and said (at 855):
The continuing trespass must be distinguished from a trespass that effects a permanent change in the condition of the land. The latter, while resulting in a continuing harm, does not subject the trespasser to liability for a continuing trespass. See Restatement of Torts, §162, comment (d). If a nuisance at the time of creation is a permanent one, the consequences of which in the normal course of things will continue indefinitely, there can be but a single action therefore to recover past and future damages when the statute of limitations runs against such cause of action from the time it first occurred, or at least from the date it should reasonably have been discovered.
*63 The court went on to note, “[t]hus, the issue of whether the statute of limitations is tolled turns on whether the injuries in this case are of a permanent nature, or conversely, can be characterized as separate and recurrent injuries.” Id. at 855-56. The court found that additional discovery was necessary in order to determine whether the defendant had improperly disposed of chemicals at any time within the statute of limitations. Id.
For these reasons, I conclude that, where, as here, there is no evidence of a recurring release of contaminants onto defendants’ properties or into the groundwater under defendants’ properties within the statutory period (1988-1991) the doctrine of “continuing trespass” should not be applied so as to toll the statute of limitations, unless the contamination was not, in the exercise of due diligence, reasonably discoverable during the statutory period. In view of the prior contrary rulings of this Court, however, I believe that this is a matter more properly left for determination by the appellate courts of the Commonwealth, and should not be the basis for the allowance of summary judgment in this case.
Plaintiff also contends that, in any event, on the facts of this case, the statute was tolled because the plaintiffs neither knew nor could reasonably have discovered the contamination prior to their attempted sale of the property in 1988.1 find this argument also to be unconvincing on the facts of this case, but not quite so clearly implausible as to warrant disposition of the complaint on summary judgment.
The situation in Tagliente v. Himmer, 949 F.2d 1 (1st Cir. 1991) was analogous. There, plaintiff alleged fraudulent misrepresentations which had been made relating to his purchase of land in Methuen, Massachusetts. The sellers had told him that the land was visible and accessible and had assured him that the extent of wetlands on the property would satisfy the open space requirements of the local zoning laws. The court concluded, however, that the statute of limitations was not tolled because, through the exercise of reasonable diligence, inspection and study the plaintiff could have learned about the land’s defects. The Court pointed out that plaintiff (like plaintiff here — see p. 3, supra) “had the right to have engineers or inspectors inspect the property . . . and had the unrestricted opportunify to inspect the land, conduct surveys, secure topographical studies, and study the regulations governing use and conservation in Methuen.” Id., 5. Moreover, the deed (like the Appraisal Report here, with respect to contamination) had specifically excepted from its warranty coverage any “zoning regulations and ordinances of any governmental body having jurisdiction over the premises.” Id., 6. In these circumstances, the court found that plaintiffs were surely on notice that there might be a regulation of wetlands by the government and that there was not “anything inherently unknowable about the land, or at the very least anything that the appellant could not have learned through reasonable diligence.” Id., 6. The Court concluded that the action had accrued no later than the date plaintiff had purchased the property, and was thus time-barred.
Similarly here, plaintiff physicians were specifically advised (by the Appraisal Report) that the appraisal was conditioned upon there being no contamination on the premises, and the seller, upon specific inquiry, had communicated, through Ms. Jones, to the broker who dealt with the plaintiff physicians prior to their purchase, that no environmental study had been performed, and that plaintiffs could have access to the land to conduct a site assessment, if they so desired.
In view of the plaintiff physicians’ deposition denials, however, that they were aware of this, and the absence of facts which clearly demonstrate whether the Trust’s broker’s knowledge should be imputed to the Trust under the circumstances, I conclude that, while close, the matter is not properly susceptible to a determination by summary judgment.
ORDER
For all of the above reasons, it is hereby ORDERED that defendant’s Spinazola’s motion for partial summary judgment is DENIED, without prejudice, however, to reconsideration of the issues by way of motion for a directed verdict and/or motion for judgment N.O.V., after trial.

 The participants in the Trust are the beneficiaries, Drs. John M. Hartong and Jerry R. Youkey and their wives, Kathleen L. Hartong and Sharon Youkey as trustees.