USA v. Burke, et al.                    CR-96-050-M    11/25/97

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                     Criminal No. 96-50-1-6-M

John Burke, Stephen Burke,
Matthew McDonald, Patrick McGonagle,
Michael O'Halloran, and Anthony Shea

## MEMORANDUM ORDER

Defendant Anthony Shea, joined by his co-defendants, moved the court to continue this ongoing criminal trial, so they might have additional time in which to prepare their cross-examination of John Burke.  On November 12, 1997, the court orally denied defendants' motion to continue.  This memorandum order sets out the reasoning underlying that decision.

### Discussion

On October 14, 1997, John Burke, previously a defendant in this matter, pled guilty to count 4 of the second superseding indictment (conspiracy to commit robbery).  Counsel for most of the remaining defendants attended Burke's change of plea hearing.  Those that were not present learned of Burke's plea by the following morning.  At that point, all counsel certainly should

have anticipated the possibility that Burke would testify at trial.

On November 5, 1997, the government made the point clear, when it announced that Burke had agreed to and would in fact testify the following week. By Friday, November 7th, the government had provided defense counsel with virtually all Rule 16, Jencks Act, Brady, and Giglio material, and defense counsel had the weekend to review those materials and prepare for Burke's cross-examination. On Monday, November 10, the government fulfilled its remaining disclosure obligations. Counsel then had the Veteran's Day holiday (Tuesday, November 11) to continue their review of the discovery materials and refine their cross-examination strategy. Nevertheless, defendants claimed that they needed yet additional time to review the discovery materials provided to them, conduct additional investigations into Burke's background, and prepare their cross-examination.

Although each case is sui generis, the court of appeals for this circuit has identified several factors which a trial court ought to take into consideration when ruling upon a criminal defendant's request for a continuance:

2

1.   the reasons given for the requested continuance;

2.   the likelihood of injustice or unfair prejudice attributable to the denial of a continuance;

3.   the amount of time needed for effective preparation;

4.   the amount of time previously available for preparation and how well the defendant used that time;

5.   the complexity of the case;

6.   the availability of assistance from other sources;

7.   the probable utility of a continuance;

8.   the extent of inconvenience to others (such as the court, the jury, the witnesses, and the government);

9.   the availability of discovery from the prosecution; and

10.  the existence of prior delays and their reasons.

See United States v. Saccoccia, 58 F.3d 754, 770 (1st Cir. 1995), cert. denied, 116 S.Ct. 1322 (1996); United States v. Rodriquez Cortes, 949 F.2d 532, 545 (1st Cir. 1991); United States v. Lussier, 929 F.2d 25, 28 (1st Cir. 1991); United States v. Lau, 828 F.2d 871, 876 (1st Cir. 1987). After considering each of those factors, the court concluded that a mid-trial continuance was neither necessary nor desirable.

I.   Defendants' Reasons for a Continuance and the
     Likelihood of Prejudice Absent a Continuance.

Plainly, one of the most important factors to be considered when ruling upon a motion to continue is the movant's basis for seeking the continuance. Accordingly, on Friday, November 7, 1997, the court asked all defense counsel to articulate precisely why they needed a continuance in order to effectively represent their clients and engage in a meaningful cross-examination of Burke. Other than general conclusory statements invoking defendants' constitutional rights, counsel provided no specific reasons warranting a continuance. Nor did counsel identify exactly what they sought to "investigate" or disclose what useful or exculpatory information such investigations were likely to produce. Accordingly, the court afforded counsel an opportunity to formulate and articulate specific bases for the requested continuance over the weekend.

The following Monday, the court again asked counsel to identify specific reasons why a mid-trial continuance was necessary. Other than claim that they sought additional time to investigate Mr. Burke's background for impeachment purposes, defendants generally failed to articulate precisely what information they sought to obtain, or what prejudice they might

4

suffer if the court denied the motion to continue.  Counsel for Anthony Shea did, however, raise two issues which warrant brief attention.

Shea's attorney represented that he needed additional time to investigate: (i) Burke's possible role in the murder of one James Harrington; and (ii) Burke's disciplinary records from FCI Otisville.  With regard to the former, the court noted that such evidence of "other bad acts" would likely be inadmissible under Federal Rule of Evidence 608(b).  With regard to Mr. Burke's disciplinary records from FCI Otisville, such material would likely be cumulative and minimally relevant; Mr. Burke has a lengthy and substantial criminal history (including, among other things, his admitted murder of Steven Hughes), which provided ample fertile ground for cross-examination and impeachment.  An investigation into the nature and/or extent of Burke's rules infractions and disciplinary history while serving his sentence at FCI Otisville would be somewhat anticlimactic and not necessary to permit counsel to conduct a thorough and effective cross-examination focused on impeachment.

Defendants failed to persuade the court that they would suffer any unfair disadvantage, prejudice, or injustice in the

absence of a mid-trial continuance and additional time beyond that already afforded to conduct general unfocused investigations.

II.  The Amount of Time Necessary to Effectively Prepare to Cross-Examine Burke and the Time Previously Available for Such Preparation.

After listening to defendants' oral arguments and carefully considering their written submissions in support of the motion to continue trial, the court concluded that defendants had been afforded ample time and funding to conduct extensive investigations into the conduct charged in the indictment. The court also noted that the government intended to elicit testimony from Mr. Burke relating exclusively to that charged conduct. So, while the source of the information might have been unanticipated, the subject of Mr. Burke's direct testimony provided no surprises nor would it compel defendants to further investigate substantive aspects of their defenses (e.g., existence of alibi witnesses, availability of expert witnesses, etc.). Finally, because the trial day runs from 8:30 a.m. to 1:30 p.m., counsel had the opportunity to use most afternoons and evenings following trial to conduct whatever additional investigation they thought might prove helpful and prepare for Burke's cross-examination.

III. Other Considerations.

Despite the fact that this is a relatively complex case, the addition of John Burke as one of the government's witnesses did not add to that complexity. Equally importantly, that Burke would testify did not alter the nature of the government's case or its trial strategy. Because the government represented that Burke would testify exclusively about the conduct charged in the second superseding indictment (focusing primarily upon the conspiracy alleged in Count 3) -- matters with which defense counsel were intimately familiar and with regard to which they conducted lengthy and thorough pretrial investigations, and about which numerous other witnesses had already testified -- defendants were not compelled to rethink, reformulate, or restructure their respective defenses.

With regard to defendants' claims that they needed additional time to investigate Burke's other bad acts (as part of an impeachment strategy), defense counsel failed to articulate any specific conduct that they sought to investigate or information that they sought to obtain that would be admissible. Because the court allowed a subpoena to issue seeking a number of letters between John Burke and Lisa Divola (which provided potentially powerful impeachment material), and because Burke's

7

extensive criminal record represented another rich source of impeachment material, it is hard to determine what additional evidence defendants hoped to gather that would be as relevant, and not cumulative. Based upon counsels' submissions and oral argument, it is clear that counsel also had difficulty envisioning what form such hoped for evidence might take. Accordingly, the court was not persuaded that additional time would be either helpful or necessary.

In the end, the court concluded that nearly all of the factors identified by the court of appeals (and outlined above) counseled in favor of denying defendants' motion for continuance. Defendants failed to articulate why a mid-trial continuance was either necessary or would likely be productive, and the obvious disruptive effect that it would have upon the trial and the substantial inconvenience it would impose upon the jury (which had, to that point, sat for over nine weeks and listened to testimony from over 100 witnesses) would have been needless. The prospect that Burke would testify at trial did not present any substantial risk that defendants would be caught unaware or unprepared to address and rebut evidence related to charges with which they were unfamiliar. To the contrary, Burke would testify

8

about matters which defendants had thoroughly investigated over the course of many months preceding trial.

## Conclusion

For the foregoing reasons, the court concluded that defendants failed to articulate a reasonable basis for their requested mid-trial continuance. Importantly, they failed to identify any potential source of prejudice or injustice if the court denied the motion. In light of all of the factors properly considered, the court, in the exercise of its discretion, denied defendants' motion. See, e.g., United States v. Rodriguez Cortes, 949 F.2d at 545 ("On matters of continuances, broad discretion must be granted trial courts and only unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay constitutes an abuse of discretion") (citations and internal quotation marks omitted).

Absent unusual and compelling circumstances, defendants are not normally entitled to a continuance so that they might generally "investigate" matters or formulate a cogent cross-examination upon learning that a particular individual will likely testify at trial. See United States v. Brand, 80 F.3d 560, 564-5 (1st Cir. 1996) (holding that trial court did not

9

abuse its discretion in denying defendants' request for a continuance so that they might gather impeachment material and evidence of other bad acts with regard to former co-defendant who pled guilty and then testified at trial), cert. denied, 117 S.Ct. 737 (1997). Accordingly, the court denied defendants' motion to continue the trial (document no. 777).

However, to accommodate defendants' desire for additional time to prepare for cross-examination of Burke, the court directed the government to conduct its examination of Mr. Burke on Thursday, November 13 (and, if necessary, the following day) and ruled that defendants would be permitted to cross-examine Mr. Burke on the following Monday at the earliest. Accordingly, defendants were afforded an additional weekend to prepare their cross-examination, further develop an impeachment strategy, and continue their general investigations into Mr. Burke's background.

Defendants had over a month between the day on which Burke pled guilty and the day on which they would begin their cross-examination of him in which to plan and prepare their cross-examination strategy (assuming, of course, that when Burke pled guilty, counsel made the reasonable assumption that he would very

likely testify at trial).[1]  At a minimum, defense counsel were
afforded nearly two weeks (which included two weekends, a federal
holiday, and most afternoons and evenings) in which to prepare
after they formally learned that Burke would indeed testify.  In
the end, the court afforded defendants ample time to prepare for
cross-examination of Burke and a continuance of the trial was
neither necessary nor appropriate.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 25, 1997

cc:   David A. Vicinanzo, Esq.
      Peter D. Anderson, Esq.
      Matthew J. Lahey, Esq.
      Bruce E. Kenna, Esq.
      Douglas J. Miller, Esq.
      Michael J. Iacopino, Esq.
      Bjorn R. Lange, Esq.
      David H. Bownes, Esq.
      Edward D. Philpot, Jr., Esq.
      United States Marshal
      United States Probation
      Gregory V. Sullivan, Esq.

---

[1]  Counsel for defendants are all experienced and very
capable attorneys, familiar with federal criminal prosecutions.
As such, they were undoubtedly aware that many federal criminal
prosecutions, particularly since introduction of the sentencing
guidelines, involve the testimony of former defendants who,
rather than proceed to trial, decide to plead guilty and testify
as a cooperating government witness.  Reason and experience
suggest that once Burke pled guilty, it was very likely that he
would testify on behalf of the government.

11