Seale v. Riordan                    CV-98-481-JD  01/19/00
            UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE


Michael A.R. Seale

     v.                              Civil No. 98-481-JD
                                     Opinion No. 2000 DNH 014
Denis Riordan, et al.


                        O R D E R


     The plaintiff, Michael Seale, brought claims against the

defendants under 42 U.S.C. § 1983, alleging that he received

inadequate medical care while in detention at the Hillsborough

County House of Corrections.  The defendant James O'Mara,

Superintendent of the Hillsborough County Department of

Corrections, who was sued individually and in his official

capacity, moves for summary judgment (document no. 68) and Seale

objects.  PrimeCare Medical, the third-party defendant, joins in

the motion (document no. 70).  Also before the court is third-

party plaintiff James O'Mara's motion for summary judgment

against third-party defendant PrimeCare Medical (document no.

64).

                    Standard of Review

     Summary judgment is appropriate when the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "An issue is only 'genuine' if there is sufficient evidence to permit a reasonable jury to resolve the point in the nonmoving party's favor . . . while a fact is only 'material' if it has 'the potential to affect the outcome of the suit under the applicable law.'"  Bourque v. FDIC, 42 F.3d 704, 708 (1st Cir. 1994) (citations omitted).  In response to a properly supported motion for summary judgment, the nonmoving party bears the burden to show a genuine issue for trial by presenting significant material evidence in support of the claim.  See Tardie v. Rehabilitation Hosp., 168 F.3d 538, 541 (1st Cir. 1999).  The record evidence is taken in the light most favorable to the nonmoving party.  See Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999).  Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## Background[1]

On or about January 7, 1998, Seale, who was in the custody of the Immigration and Naturalization Service ("INS"), was sent to be detained at the Hillsborough County Department of Corrections ("HCDOC"), where he remained until August of 1998. On January 8, 1998, Seale completed an intake form concerning his medical history. He reported that he took the drug coumadin, an anticoagulant, on a daily basis.

Seale claims that the first instance of inadequate medical care occurred when he missed his daily dose of coumadin on January 7, the date of his transfer to HCDOC, allegedly because he was not given the intake form until January 8. The medical notes from Seale's file indicate that on January 7, HCDOC officials were aware of Seale's coumadin prescription, although the notes do not indicate whether Seale received his daily dose on January 7. Seale does not say whether he verbally requested a dose of coumadin on January 7, nor does he specifically allege that anyone refused to give him his medication.

Seale alleges that on a number of other occasions during his

_____

[1]The court will treat certain factual averments in Seale's verified pleadings as the functional equivalent of an affidavit, to the extent they are made from personal knowledge and set forth facts that would be admissible in evidence. See Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991).

stay at HCDOC he was denied his daily dose of coumadin. Seale failed to name any individuals responsible for this action until he submitted his objection to this motion, in which he identified "Nurse Roy" and "Nurse Trish."[2] Seale alleges that these nurses offered him coumadin that was crushed and contaminated by residue that he did not recognize but believed to be from a previous patient's medication. Consequently, he refused on these occasions to take the medicine, and he claims that they refused to replace it. In addition, Seale claims that "Nurse Trish" sometimes forgot to bring Seale his coumadin.

The medical notes indicate that roughly once a month, Seale's blood was drawn and tested, after which a physician, Dr. Stein, reviewed the lab results and indicated that Seale's coumadin prescription should continue. The notes do not specifically reveal whether Seale was given coumadin on a daily basis. On March 10, 1998, the notes say that Seale refused to take his medications, including coumadin, stating "he doesn't want these anymore." The notes also say that Seale was "aware of possible complication" resulting from his refusal to take the drugs. On April 24, 1998, the medical notes say that Seale was to stop receiving coumadin a few days before he was scheduled to

---

[2]Seale has not named any of the individuals who allegedly failed to give him adequate care as defendants in this action.

4

have surgery, and was to resume after his surgery.

In addition to the alleged refusals to provide medication, Seale claims that his requests to see a physician for rectal pain and bleeding were ignored for approximately two months beginning in late January of 1998. The medical notes and affidavits indicate that the first time Seale met with a physician was January 27, 1998, for a physical. The notes make no mention of a complaint or diagnosis of rectal pain or bleeding. The notes reflect that on February 14, 1998, a "sick slip" was recorded that reported Seale's rectal bleeding. Seale claims that this was not the first time he had complained of pain and bleeding. However, Seale does not indicate to whom he complained earlier or who denied his earlier requests to see a physician.

Seale saw Dr. Stein on February 17, 1998, and was examined and treated for his rectal distress. He had follow-up appointments with Dr. Stein on March 6 and March 20, 1998. On April 13, 1998, Seale visited a surgeon, after which he was scheduled for rectal surgery on May 1, 1998. Seale saw Dr. Stein again on April 24, 1998, and underwent surgery on May 1, 1998.

Seale claims that between May 1 and June 4, 1998, and between June 9 and July 7, 1998, he never saw Dr. Stein. Seale does not indicate that he requested to see a doctor during these periods, or that anyone denied such a request. The medical

5

records indicate that Dr. Stein saw him on May 5, 8, and 26. Seale saw the surgeon on May 14 and again on June 4, 1998, at which time Seale says the surgeon advised that he might need a second surgery but that other treatments would probably obviate the need for further surgery. On July 24, 1998, Dr. Stein examined Seale, who was still complaining of rectal pain. On August 18, 1998, Seale was discharged from HCDOC.

Discussion

I. Motion for Summary Judgment by Defendant O'Mara against Plaintiff

Seale's claim against O'Mara is based on the allegedly inadequate care Seale received from O'Mara's subordinates. It is well established that respondeat superior liability is not available under 42 U.S.C. § 1983. See Aponte Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998). A supervisor may be held liable only "if he [or she] formulates a policy or engages in a practice that leads to a civil rights violation committed by another." Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)). In order to establish supervisory liability under § 1983, a plaintiff must show that (1) a subordinate violated the plaintiff's rights under federal law, and (2) the supervisor's

6

own acts or omissions are affirmatively linked to the subordinate's unlawful conduct.  See Aponte Matos, 135 F.3d at 192.

A.   Violation by a Subordinate

Seale alleges that individual health care providers at HCDOC violated his constitutional right to due process by denying him medication and access to physicians.[3]  To show that his right to due process was violated, Seale must show that he had a serious medical need, and that a subordinate showed deliberate indifference to his medical need "tantamount to an intent to punish."  Elliott v. Cheshire County, 940 F.2d 7, 10 (1st Cir. 1991) (applying standard to detainee claiming due process violation); DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991) (using same standard in Eighth Amendment context).  The First Circuit has provided clear guidance for interpreting the

---

[3]Because Seale is a detainee and has not been convicted of a crime, he may not be punished under the Due Process Clause of the Fifth and Fourteenth Amendments.  See Bell v. Wolfish, 441 U.S. 520, 535-37 (1979).  The Eighth Amendment prohibition against cruel and unusual punishment does not apply, since Seale may not be punished at all.  See id. at 535 n.16; Elliott v. Cheshire County, 940 F.2d 7, 10 n.2 (1st Cir. 1991).  But see Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17-18 (1st Cir. 1995) (analyzing pretrial detainee's Eighth Amendment claim).  However, the deliberate indifference test is the same for alleged violations of either the Due Process Clause or the Eighth Amendment.  See id.

deliberate indifference standard:

> In evaluating the quality of medical care in an institutional setting, courts must fairly weigh the practical constraints facing prison officials. Moreover, inadvertent failures to provide medical care, even if negligent, do not sink to the level of deliberate indifference. In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain. The requisite state of mind may be manifested by the officials' response to an inmate's known needs or by denial, delay, or interference with prescribed health care.

DesRosiers, 949 F.2d at 19 (citations omitted). The court applies this standard to the record before it on summary judgment to determine whether a fact-finder could find that a subordinate acted with deliberate indifference to Seale's serious medical needs.

### 1. Refusal to Provide Coumadin

Presuming that Seale had serious medical needs based on a prescription for coumadin, the record fails to show that the health care providers at HCDOC acted with deliberate indifference with intent to punish Seale when they withheld his coumadin. Seale alleges that a nurse negligently forgot to give him his coumadin on occasion. Negligence, even if it is gross negligence, does not rise to the level of deliberate indifference with intent to punish. See Consolo v. George, 58 F.3d 791, 794 (1st Cir. 1995). Similarly, the failure to give Seale coumadin

8

on January 7, 1998, fails to show deliberate indifference on anyone's part, particularly since Seale did not allege that any particular individual knew of his prescription and was responsible for withholding it.

Seale's allegation that nurses gave him coumadin crushed up with other drug residue also fails to meet the deliberate indifference standard. While this allegation, if proven, may constitute negligence, it does not indicate that the nurses "had a culpable state of mind and intended wantonly to inflict pain." DesRosiers, 949 F.2d at 19. There is no evidence, for example, that the nurses thought their actions would cause Seale any pain, or that they intended to punish Seale by offering him adulterated medication, or that they deliberately intended for him to suffer ill effects from going without the coumadin. Even if the nurses' actions were sufficient to make out a claim of negligence or medical malpractice, without deliberate indifference there is inadequate support for a violation of Seale's constitutional rights. See id. at 20.

### 2. Denial of Access to Physician

Seale claims that he was denied access to a physician in January and February, when he first complained of his rectal distress, and again in June and July after his surgery. The record fails to show any triable issue of fact regarding the care

9

Seale received or that his care providers acted with deliberate indifference. Seale's failure to explain how he requested to see a doctor, who received his request, and who denied it makes it difficult for the court even to identify who it was that Seale believes acted with deliberate indifference. The medical notes show that Seale received regular attention from the medical staff in January and February, including a physical exam by Dr. Stein on January 27, 1998. Seale saw Dr. Stein again on February 17, 1998, three days after a "sick slip" was recorded noting his rectal bleeding. Seale proceeded to receive follow-up visits and surgery to treat the problem. The record shows Seale received medical care for his rectal condition, which is all that is required to satisfy due process. "[A] claim of inadequate medical treatment which reflects no more than a disagreement with prison officials about what constitutes appropriate medical care does not state a cognizable claim under the Eighth Amendment" or under the Due Process Clause. DesRosiers, 949 F.2d at 20. Based on the record presented for summary judgment, there is no genuine issue of fact that would lead to a conclusion that anyone acted with deliberate indifference to Seale's need for medical treatment.

Similarly, Seale's claim that he was denied access to a physician after his surgery on May 1, 1998, fails to raise a

10

triable issue. Seale does not provide evidence that he requested to see a physician or that anyone deliberately denied his request. The medical records show that he did see physicians after his surgery, and was also monitored by the nursing staff. While Seale alleged in his amended complaint that the surgeon recommended a second operation on June 4, 1998, and that this operation was never provided, in his objection to this motion Seale states that the surgeon said only that he might need another operation but that it could probably be avoided. Moreover, the medical records do not indicate that any doctor ever recommended that a second surgical procedure be performed. Therefore, there is no evidence in the record to show that anyone deliberately disregarded Seale's medical needs after his surgery.

For the foregoing reasons, Seale has failed to provide sufficient evidence to raise a triable issue that anyone acted with deliberate indifference to his serious medical needs. Therefore, Seale has not presented a triable issue that his constitutional rights were violated. The court need not proceed further with the supervisory liability analysis or consider whether the defendant O'Mara is entitled to qualified immunity.

11

II.  <u>Motion for Summary Judgment by Third Party Plaintiff O'Mara</u>
     <u>against Third Party Defendant PrimeCare Medical</u>

The defendant O'Mara filed a third-party complaint against PrimeCare Medical, a private entity that contracted with Hillsborough County ("the County") to provide medical care for inmates and detainees of HCDOC.  The third-party complaint seeks indemnification and contribution from PrimeCare.  O'Mara contends that PrimeCare is obligated under its contract with the County ("the Contract") to defend O'Mara in this action, which PrimeCare has refused to do.  PrimeCare acknowledges that it is obligated to indemnify the County in the event the County is found liable for claims arising out of PrimeCare's services.  However, PrimeCare asserts that the Contract does not require it to defend against any such claims.  O'Mara and PrimeCare agree that Seale's claims against O'Mara arise from medical care provided by PrimeCare under the Contract, and that O'Mara is an employee of the County.

O'Mara and PrimeCare focus their dispute on the "hold harmless" language in the Contract.  "Interpretation of a contract . . . is ultimately a question of law for this court to decide."  <u>Merrimack Sch. Dist. v. National Sch. Bus Serv.</u>, 140 N.H. 9, 11 (1995).  The Contract contains the following provisions in Paragraph 7, in relevant part:

12

a. PrimeCare Medical agrees to indemnify, and hold harmless, Hillsborough County Department of Corrections, its agents, servants and employees, from any and all claims, actions, lawsuits, damages, judgments or liabilities of any kind whatsoever arising out of the operation and maintenance of the medical services program conducted by PrimeCare Medical . . . . In litigation involving both medical care and any other issue within the facility the County and PrimeCare Medical shall jointly defend the action.

b. Hillsborough County Department of Corrections agrees to indemnify, and hold harmless PrimeCare Medical, its agents, servants, employees and medical staff from any and all injuries, claims, actions, lawsuits, damages, judgments or liabilities of any kind whatsoever arising out of non-medical related claims involving the operation and maintenance of the FACILITY, the custody of the inmates/detainees and all provisions for the physical security of all such PrimeCare Medical personnel. It is understood that PrimeCare Medical's operation and maintenance of the aforesaid program is not included within the meaning of the foregoing phrase "arising out of non-medical related claims involving the operation and maintenance of the FACILITY."

O'Mara argues that the words "hold harmless" in paragraph 7(a), because they appear in addition to the word indemnify, must mean that PrimeCare's duties under the contract include more than just indemnifying the County for the amount of any judgment. O'Mara contends that PrimeCare's contractual duty to hold the County harmless from any claims, actions or lawsuits includes a duty to defend the County from suit. Otherwise, the County would suffer harm in the form of attorney's fees and costs, as it has

13

already done by defending O'Mara thus far in the case brought by Seale.

PrimeCare argues that the contract contains no express duty to defend provision that requires PrimeCare to defend O'Mara against Seale. PrimeCare also cites case law in New Hampshire and other jurisdictions to support its proposition that a duty to defend is not coextensive with a duty to indemnify and cannot be implied by the words "indemnify and hold harmless."

The duty to indemnify is separate and distinct from the duty to defend. See Happy House Amusement, Inc. v. New Hampshire Ins. Co., 135 N.H. 719, 721 (1992). The question in this case is whether both duties apply to PrimeCare. The answer lies in the contract's plain language, including language that neither party saw fit to discuss.

While indemnity agreements are strictly construed, their scope need not be limited by explicit language where the parties' intent is clearly evident. See Merrimack Sch. Dist., 140 N.H. at 12. The parties to this contract included the following sentence at the end of paragraph 7(a), "In litigation involving both medical care and any other issue within the facility the County and PrimeCare Medical shall jointly defend the action." If the court accepted PrimeCare's argument, then the Contract would require PrimeCare to defend claims arising from both medical care

14

and non-medical events, but not claims arising from medical care alone. This incongruous result suggests that the parties intended for PrimeCare to defend claims arising from medical care, the County to defend claims arising from non-medical events, and both parties to defend claims arising from medical and non-medical events.

The court construes the Contract in accordance with the parties' apparent intent, as evident in the Contract's language. The court therefore holds that the Contract unambiguously imposes on PrimeCare the duty to defend O'Mara from Seale's claims.

## Conclusion

For the foregoing reasons, the defendant O'Mara's motion for summary judgment against the plaintiff (document no. 68) is granted. O'Mara's motion for summary judgment against third party defendant PrimeCare Medical (document no. 64) is also granted. The court directs the clerk to enter judgment for the defendant O'Mara.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

January 19, 2000
cc:  Michael Adrian Ricardo Seale, pro se
     T. David Plourde, Esquire
     John P. Sherman, Esquire
     Wilbur A. Glahn III, Esquire

15