Sherman v. Sullivan County          CV-93-499-SD  08/23/95
                UNITED STATES DISTRICT COURT FOR THE

                    DISTRICT OF NEW HAMPSHIRE


Francis M. Sherman

     v.                                    Civil No. 93-499-SD

County of Sullivan, et al


                          O R D E R


     Plaintiff Francis M. Sherman brings this civil rights action
pursuant to 42 U.S.C. § 1983.  Sherman alleges that his First,
Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights
were violated by defendants while he was in their custody as a
pretrial detainee from the evening of October 4, 1990, to the
morning of October 6, 1990.

     Presently before the court are (1) a motion for summary
judgment filed by defendants City of Claremont, the Claremont
Police Department, and unknown members of the Claremont Police
Department (collectively referred to herein as the Claremont
defendants), and (2) a motion for summary judgment filed by
defendants County of Sullivan, Sullivan County Department of
Corrections, Superintendent of Department of Corrections Sandra
LaPointe, and unknown employees of the Department of Corrections
(collectively referred to herein as the Sullivan defendants).

Plaintiff objects to both motions.

## Background

Plaintiff Francis M. Sherman has been a quadriplegic since 1981, when he suffered a spinal cord injury. With respect to his ability to care for himself, Sherman testified during his deposition as follows,

> I take care of myself through the use of personal care attendants who help me with my . . . with all my activities of daily living, which includes everything from eating, exercising, personal hygiene, getting in and out of bed, everything that we all do.

Deposition of Francis M. Sherman at 7.

On October 4, 1990, Sherman was arrested in Claremont, New Hampshire, and charged with purchasing marijuana from an undercover police officer. Because plaintiff was unable to raise the $10,000 cash bail required for his release, he was detained. However, the Claremont police determined that their own facilities were inadequate to meet plaintiff's medical needs and transported him to the Sullivan County House of Correction (SCHOC) for detention. Plaintiff was held at SCHOC until the morning of October 6, when he was released on bail.

## Discussion

### 1.  Summary Judgment Standard

Under Rule 56(c), Fed. R. Civ. P., summary judgment is appropriate if the evidence before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The summary judgment process

> involves shifting burdens between the moving and the nonmoving parties.  Initially, the onus falls upon the moving party to aver "'an absence of evidence to support the nonmoving party's case.'"  Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  Once the moving party satisfies this requirement, the pendulum swings back to the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)). . . .

LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994).

"Essentially, Rule 56(c) mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 (1st Cir. 1995) (quoting Celotex Corp., supra, 477 U.S.

3

at 322).  When the nonmoving party bears the burden of proof at trial and fails to make such a showing, "there can no longer be a genuine issue as to any material fact: the failure of proof as to an essential element necessarily renders all other facts immaterial, and the moving party is entitled to judgment as a matter of law."  Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994) (citing Celotex Corp., supra, 477 U.S. at 322-23), cert. denied, ___ U.S. ___, 115 S. Ct. 1958 (1995).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the nonmoving party's favor.  Anderson, supra, 477 U.S. at 255; Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1159 (1st Cir. 1994)

## 2.  Narrowing the Focus of Plaintiff's Constitutional Claims

Plaintiff contends that the defendants were deliberately indifferent to his serious medical needs between the time he was arrested and the time he was released on bail and that this conduct violated his First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights.

The court finds that the evidence plaintiff has submitted in response to defendants' motions for summary judgment is insufficient to support claims under the First, Fourth, Fifth,

4

and Ninth Amendments.  Defendants' motions for summary judgment are therefore granted as to such claims.

The court turns next to the narrower question of whether plaintiff's section 1983 claims should be evaluated under the Eighth Amendment or the Fourteenth Amendment, the answer to which rests on the undisputed fact that plaintiff was a pretrial detainee between the time of his arrest and the time of his release on bail.

It is well established that "'[t]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'"  Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977), and citing Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979)).  Therefore, "[b]ecause there had been no formal adjudication of guilt against [Sherman] at the time he [allegedly] required medical care, the Eighth Amendment has no application."  Id.[1]

Plaintiff's rights are instead governed by the Due Process Clause of the Fourteenth Amendment.  Under this constitutional provision, "a [pretrial] detainee may not be punished prior to an

---

[1]Consequently, the court herewith grants defendants' motions for summary judgment as to plaintiff's Eighth Amendment claims.

5

adjudication of guilt in accordance with due process of law."
Bell, supra, 441 U.S. at 535.

Although the Eighth Amendment does not apply to the circumstances of this case, the court notes that the due process rights of pretrial detainees in need of medical care "are at least as great as the Eighth Amendment protections available to . . . convicted prisoner[s]." Revere, supra, 463 U.S. at 244. Thus, the standard used to determine whether a prison official's failure to provide medical care to a convicted prisoner violates that prisoner's Eighth Amendment rights provides guidance for this court's determination of whether Sherman's Fourteenth Amendment due process rights have been violated.

An inmate's Eighth Amendment rights are violated when a prison official is deliberately indifferent to "a substantial risk of serious harm to [the] inmate . . . ." Farmer v. Brennan, ___ U.S. ___, ___, 114 S. Ct. 1970, 1974 (1994). In the context of medical care, this means that a prison official violates the Eighth Amendment if he is "deliberately indifferent" to the "serious medical needs" of a prisoner. Helling v. McKinney, ___ U.S. ___, ___, 113 S. Ct. 2475, 2480 (1993); DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir. 1991). The First Circuit applies this same deliberate indifference standard to cases involving pretrial detainees. See Elliott v. Cheshire County, 940 F.2d 7, 10 (1st

6

Cir. 1991) ("'jail officials violate the due process rights of their detainees if they exhibit a deliberate indifference to the medical needs of the detainees that is tantamount to an intent to punish'" (quoting Danese v. Asman, 875 F.2d 1239, 1243 (6th Cir. 1989), cert. denied, 494 U.S. 1027 (1990))).

Having established herein that plaintiff's claims against the defendants are Fourteenth Amendment claims, the court turns next to the question of whether summary judgment is warranted on any of those claims.

### 3. The Unknown Employees of the SCHOC (Count I)

Plaintiff asserts that certain unknown employees of the SCHOC "deliberately and intentionally failed to provide [him] with necessary medical treatment" in violation of his Fourteenth Amendment rights. Complaint ¶ 31.

#### a. Serious Medical Need

In order for a section 1983 claim based on failure to provide medical care to survive summary judgment, plaintiff must first create a genuine issue as to whether he had a "serious medical need" for such care.

"A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is

7

so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). See also Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977). "The 'seriousness' of an inmate's needs may also be determined by reference to the effect of the delay of treatment." Gaudreault, supra, 923 F.2d at 208.

When plaintiff arrived at SCHOC on the evening of October 4, 1990, the prison staff was aware that he needed "total care." Deposition of Paula Burrell at 16. The court finds that the undisputed evidence that plaintiff, due to his condition as a quadriplegic, required total care during his detention at SCHOC, is sufficient to support a finding that plaintiff had serious medical needs during such detention.


   b.  Deliberate Indifference

Deliberate indifference "entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, supra, 114 S. Ct. at 1978 (citing Estelle v. Gamble, 429 U.S. 97 (1976)).

The test for "deliberate indifference" recently adopted by the Supreme Court for Eighth Amendment cases is the subjective

8

recklessness standard used in criminal law. Farmer, supra, 114 S. Ct. at 1980. Under this test, a "claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id., 114 S. Ct. at 1981. "Whether a prison official had the requisite knowledge of a substantial risk [is] a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. (citation omitted). The First Circuit, applying the subjective criminal recklessness standard, has held that "[t]he requisite state of mind may be manifested by the officials' response to an inmate's known needs or by denial, delay, or interference with prescribed health care." DesRosiers, supra, 949 F.2d at 19. See also Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985).

Plaintiff cites several incidents to support his claim that the SCHOC employees were deliberately indifferent to his serious medical needs.

The first incident is defendants' alleged failure to provide plaintiff with needed medications. Plaintiff explains in his

9

affidavit that

> [d]ue to my physical condition, I must regularly take medication to keep my body manageable and to permit me to function as well as possible, given my physical condition. My medication also permits me to be relatively comfortable. I also take medication to prevent urinary tract infections, which I am prone to, due to my physical condition. I had some of my medication with me when I was arrested. When I was brought to the jail, I was not allowed to take the medication that I had with me, because it was in unlabeled bottles. I believe I was given valium at the jail. During the course of my stay, I had violent, uncontrollable muscle spasms which were undignified, embarrassing, and extremely uncomfortable.

Affidavit of Francis M. Sherman ¶ 7.

Paula Burrell, the nurse on duty at SCHOC when plaintiff arrived on the evening of October 4, states that she was unable to give plaintiff the unknown pills he had brought with him because of SCHOC's policy regarding inmate medications. At her deposition, Burrell described this policy as follows.

> Q. . . . What is your policy or the facility's policy regarding unlabeled medication?
> A. No meds--no inmate's meds are used in the facility.
> What I do is, I take the prescription bottles that they have, and I verify with the pharmacist what prescriptions they are on, what the doctor's orders definitely are. Then I contact our county physician, relay that. And then he orders what he thinks is appropriate.

10

Deposition of Paula Burrell at 13.

Burrell states that she attempted to verify plaintiff's prescriptions with the New England Medical Center on the evening of October 4, but was unable to do so. Burrell then called Dr. Kendall, the physician on call for the county, and relayed to him the information she had about plaintiff's medications. Dr. Kendall prescribed Valium for plaintiff, which was administered to him at 1:15 a.m. Id. at 13-14.

Next, with respect to the care he received on his first night at SCHOC, plaintiff states, "I was placed in a cell with a standard jail metal bed. An extra blanket was placed on top of the metal bed and I was removed from my wheelchair and placed on top of the blanket." Sherman Affidavit ¶ 5. Sherman's statements are contradicted by Nurse Burrell's account of that evening. Burrell states, "We only have metal bunks. But because of [plaintiff's] size, we had two bunks put together for him, for his protection, so he couldn't roll off, and extra mattresses." Burrell Deposition at 15-16. Burrell further states that she ordered that plaintiff be checked every fifteen minutes during the course of the night, that he be repositioned if he was awake, and that his Texas catheter drainage bag be emptied.[2] Id.

_____

[2]Plaintiff wears a Texas catheter, "which is a condom that empties [his urine] into a bag." Sherman Affidavit ¶ 10.

11

Whereas plaintiff further states that "[t]he following morning, I was placed in my wheelchair incorrectly with little regard for my positioning. Breakfast was simply placed in front of me and no one helped me eat it. I am not physically capable of eating without assistance," Sherman Affidavit ¶ 9, Burrell maintains that "one of us fed him breakfast," Burrell Deposition at 18.

On the morning of October 5, plaintiff was transported to Claremont District Court to be arraigned. Plaintiff states that because the condom of his Texas catheter was placed on him improperly, it slipped off while he was at court, causing him to urinate on himself and on the courtroom floor. Sherman Affidavit ¶ 10. He further states, "at the Claremont District Court, I was suffering from violent muscle spasms. I was placed in my wheelchair haphazardly, which contributed to my discomfort. I was an embarrassing spectacle in a courtroom full of people. The entire experience was dehumanizing, degrading, and humiliating beyond belief." Id. ¶ 11.

After returning to SCHOC from the court, plaintiff states he was told he was being transferred to New Hampshire State Prison (NHSP) because it had better facilities to care for him. Sullivan County Attorney Marc Hathaway testified that arrangements were made to transport plaintiff to NHSP because

12

SCHOC did not want its responsibility to care for plaintiff "to continue indefinitely because it would really burn out the staff" since SCHOC is a "small institution" with "limited resources." Deposition of Marc B. Hathaway, Esq., at 14.

However, while plaintiff was en route to NHSP, orders came over the radio that he should be returned to SCHOC. The parties dispute whether this decision was made due to the cost of detaining plaintiff at NHSP or because Attorney Hathaway was making arrangements to have plaintiff's bail reduced so he could be released. Compare Sherman Affidavit ¶ 13 and SCHOC Briefing Log, Entries for 3-11 Shift on 10/5/90 with Hathaway Deposition at 18-20.

Finally, plaintiff states,

> I also require assistance for bowel movements. When I was brought to the jail, I told the guards that I needed assistance in bowel movements and that I was on a schedule of a bowel movement every other day. No assistance was provided to me. At some point during my incarceration, I awoke and found myself stripped from the waist down. A guard was cleaning me after I had fouled myself with my own excrement. At that point, I had been drifting in and out of consciousness due to the extreme pain and discomfort.

Sherman Affidavit ¶ 14.

The court finds that the totality of the disputed incidents described herein is sufficient to create a genuine issue of material fact as to whether the employees at SCHOC were

13

deliberately indifferent to plaintiff's serious medical needs while he was in their care.

### c. Qualified Immunity

The individual SCHOC defendants assert that summary judgment should be granted in their favor because they are entitled to qualified immunity for their conduct.

The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To be "clearly established", the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

"Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of 'legal facts.'"  Elder v. Holloway, ___ U.S. ___, ___, 114 S. Ct. 1019, 1023 (1994).

It has been clearly established since 1979, when the Supreme Court decided Bell v. Wolfish, that "a [pretrial] detainee may

14

not be punished prior to an adjudication of guilt in accordance with due process of law." Id., 441 U.S. at 535. Further, as early as 1983, the Supreme Court made it clear that the due process rights of pretrial detainees in need of medical care "are at least as great as the Eighth Amendment protections available to . . . convicted prisoner[s]." Revere, supra, 463 U.S. at 244.

Based on the evidence presented, the court cannot find that the defendants' conduct "was objectively reasonable, as a matter of federal law, at the time and under the circumstances then obtaining." Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1992) (citing Amsden v. Moran, 904 F.2d 748, 751 (1st Cir. 1990), cert. denied, 498 U.S. 1041 (1991)). Accordingly, the court concludes that the individual SCHOC defendants are not entitled to qualified immunity.

The Sullivan County defendants' motion for summary judgment is denied as to Count I.

4.  Defendant Sandra LaPointe (Count II)

In Count II, plaintiff alleges that defendant Sandra LaPointe, as Superintendent of SCHOC, violated his constitutional rights by failing "to properly hire, train, and supervise guards, employees, and agents," Complaint ¶ 38, and "by her acquiescence in the actions of her officers, employees and agents . . . and by

15

her failure to take steps to terminate those actions," id. ¶ 39.

There is no evidence that defendant LaPointe was directly responsible for providing medical care to plaintiff during his detention at SCHOC. Accordingly, she may only be held liable here under a theory of supervisor liability.

The limits of supervisor liability under section 1983 are well defined in the First Circuit. First, liability under section 1983 "may not be predicated upon a theory of *respondeat superior*." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989). See also Gaudreault, supra, 923 F.2d at 209 ("It is by now axiomatic that the doctrine of *respondeat superior* does not apply to claims under section 1983."). Instead, supervisory personnel such as LaPointe "can be held liable for the constitutional misconduct of [their] employees only on the basis of an 'affirmative link' between their acts and those of the offending employee." Gaudreault, supra, 923 F.2d at 209 (citing Voutour v. Vitale, 761 F.2d 812, 820 (1st Cir. 1985)).

Further, in order to hold a supervisor liable for his own acts or omissions, "[i]t must be shown that the supervisor's conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others." Gutierrez-Rodriguez, supra, 882 F.2d at 562; see also Gaudreault, supra, 923 F.2d at 209.

16

In response to the Sullivan County defendants' motion for summary judgment, plaintiff has failed to offer evidence in support of his constitutional claims against defendant LaPointe. As "'[m]ere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact,'" Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (quoting August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st Cir. 1992)), defendants' motion for summary judgment must be and herewith is granted as to the constitutional claims asserted against defendant LaPointe in Count II.[3]

## 5. SCHOC (Count IV)

SCHOC moves for summary judgment as to the municipal liability claim asserted against it in Count IV on the ground that it is not a proper defendant.

SCHOC is a department of Sullivan County. See New Hampshire Revised Statutes Annotated (RSA) 30-B:1 (1988). However, "[a] department of a municipal government is not a separate entity from the municipality for the purposes of a section 1983 claim."

---

[3]The court notes that Count II also includes a claim under New Hampshire law that defendant LaPointe breached the statutory duty imposed on her by New Hampshire Revised Statutes Annotated (RSA) 30-B:4, V (1988), to "provide each prisoner in [her] custody with necessary sustenance, clothing, bedding, and shelter." Such claim is not addressed by defendants in their motion for summary judgment and therefore survives that motion.

17

<u>Kenyon v. Cheshire County</u>, Civ. No. 92-515-M, slip op. at 6 (D.N.H. Sept. 22, 1994) (citing <u>Stump v. Gates</u>, 777 F. Supp. 808, 815 (D. Colo. 1991), <u>aff'd</u>, 986 F.2d 1429 (10th Cir. 1993); <u>Curran v. Boston</u>, 777 F. Supp. 116, 120 (D. Mass. 1991); <u>Reese v. Chicago Police Dep't</u>, 602 F. Supp. 441, 443 (N.D. Ill. 1984)).

Since SCHOC is not a separate entity from Sullivan County for the purposes of this section 1983 action, the court herewith grants defendants' motion for summary judgment as to Count IV. In so doing, the court notes that plaintiff has also named Sullivan County as a defendant and, in Count III, has asserted a municipality claim against the county identical to the claim asserted against SCHOC in Count IV. Because the court has determined that SCHOC is not a proper defendant, the court will construe Count III as encompassing the alleged wrongdoing by SCHOC.

### 6. Sullivan County (Count III)

In Count III, plaintiff asserts a municipal liability claim against Sullivan County.

"'[A] municipality cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.'" <u>Collins v. Harker Heights</u>, 503 U.S. 115, 121 (1992) (quoting

18

Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691 (1978)); see also Gaudreault, supra, 923 F.2d at 209. "'Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'" Collins, supra, 503 U.S. at 121 (quoting Monell, supra, 436 U.S. at 694).

The only policy specifically identified by plaintiff as having caused his injuries is the SCHOC policy against allowing inmates to take medications they have brought with them to the jail. See supra part 3.b. Plaintiff alleges that defendant, in implementing this policy, "fail[ed] to provide him with the necessary medication which would have prevented him from losing control of his bodily functions." Complaint ¶ 48.

When plaintiff arrived at SCHOC, he had two bottles marked "Tagamet", each of which contained four unknown pills. In accordance with SCHOC policy, plaintiff was not allowed to take these pills. Instead, Nurse Burrell attempted to verify plaintiff's prescriptions, then called the prison's physician who, in turn, prescribed Valium for plaintiff. Burrell Deposition at 13-14.

Sullivan County concedes that it had a policy prohibiting

19

the use of inmate drugs, but asserts that said policy is rationally related to a legitimate government purpose. The court agrees that the SCHOC policy in question is reasonably related to legitimate goals such as "maintain[ing] security and order at the institution" and "mak[ing] certain no . . . illicit drugs reach detainees." Bell, supra, 441 U.S. at 540.

However, the Supreme Court has rejected the argument "that only unconstitutional policies can create municipal liability under [§ 1983]." Collins, supra, 503 U.S. at 123. Instead, the proper inquiry is "whether there is a direct causal link between [the] municipal policy . . . and the alleged constitutional deprivation." Id. (quoting Canton v. Harris, 489 U.S. 378, 385 (1989)).

Nurse Burrell indicated on plaintiff's medical intake form that he was taking the following medications: Liorisal, Vitamin C, Peridium, Colace, Urec, Valium, and Tagamet. The SCHOC nurses' notes submitted by defendants indicate that plaintiff was given Valium and Liorisal for his muscle spasms during his detention. There is no indication that he received any other medications during this time.

Plaintiff asserts that he suffered from "violent, uncontrollable muscle spasms" during his detention at SCHOC because he was not given the medications he needs to keep his

20

body manageable and functioning.  Sherman Affidavit ¶ 7.

The court finds that the evidence before it creates a genuine issue of material fact as to whether plaintiff's injuries were caused by SCHOC's policy regarding inmate medications. Defendants' motion for summary judgment is therefore denied as to Count III.


## 7.  Unknown Claremont Police Officers (Count V)

In Count V, plaintiff alleges that the Claremont police officers involved in his arrest and detention were deliberately indifferent to his need for medical treatment.

Plaintiff states in his affidavit that, "At the Claremont Police Station, I asked to be placed in a medical facility, due to my limitations."  Sherman Affidavit ¶ 4.  Plaintiff also testified at his deposition that he made it "quite clear" to "every officer" at the Claremont Police Department that he had special needs and needed to go to a hospital rather than to the county jail.  Deposition of Francis M. Sherman at 28.  However, when asked if he told any of the officers he needed immediate medical attention, plaintiff stated,

> Actually, I made it quite clear to them that I did not need immediate attention, but that if I was brought to the jail, that I would certainly need medical attention before the night was out, and that I would be--I would have some very serious problems, and I

21

> would eventually be hospitalized, so there is
> no--this is inhuman to do this to me, and if
> you're going to keep me, you have to bring me
> to the hospital now.  I cannot be going to a
> jail.

Id. at 28-29.

James Benoit, one of the Claremont police officers involved in plaintiff's arrest, acknowledged during his deposition that, when it became evident plaintiff was going to be transported to SCHOC, plaintiff did indicate he had some specific needs and expressed concern about his medications.  Deposition of James A. Benoit at 18.  Benoit further testified,

> I was really conscious of Mr. Sherman's
> problems, if he needed anything immediately,
> whether it be hospitalization or any other
> kind of medical problem, he did not indicate
> so when he was in custody with me, because I
> stayed with him pretty much the whole time.
> He was there from beginning to end, when he
> was transported to the county jail.

Id.

The court finds that the evidence before it is insufficient to support a finding that plaintiff had a "serious need" for medical care during the short period of time he was in the custody of the Claremont Police Department.  Plaintiff did not request any medical care during that time period, nor was it evident that he required medical care at the time.

Further, although plaintiff did indicate that he would need medical care during the course of the night, the court finds that the decision of the Claremont officers to bring him to the SCHOC

22

rather than to a hospital does not amount to deliberate indifference of plaintiff's medical needs where, prior to making that decision, Claremont officials verified that SCHOC could provide plaintiff with the care he needed.  Hathaway Deposition at 13; Benoit Deposition at 22-23.

Accordingly, the Claremont defendants' motion for summary judgment is granted as to Count V.


## 8.  City of Claremont (Count VI)

In Count VI, plaintiff alleges a municipal liability claim against the City of Claremont.

However, as set forth supra at p.19, "'a municipality cannot be held liable *solely* because it employs a tortfeasor .. . .'" Collins, supra, 503 U.S. at 121 (quoting Monell, supra, 436 U.S. at 691).  "Instead, it is when execution of a government's policy or custom . . . inflicts the injury [complained of] that the government as an entity is responsible under § 1983.'"  Id. (quoting Monell, supra, 436 U.S. at 694).

Here, plaintiff has failed to produce any evidence that his injuries were caused by the execution of a City of Claremont policy or custom.  Since the city cannot be held liable under a respondeat superior theory, the Claremont defendants' motion for summary judgment must be and herewith is granted as to Count VI.

23

<u>Conclusion</u>

For the reasons set forth herein, the Claremont defendants' motion for summary judgment (document 25) is granted and the Sullivan County defendants' motion for summary judgment (document 28) is granted in part and denied in part. Surviving said motions are (1) the Fourteenth Amendment claim asserted against the individual Sullivan defendants in Count I; (2) the claim asserted against defendant LaPointe under RSA 30-B:4, V, in Count II; and (3) the municipal liability claim asserted against Sullivan County in Count III.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

August 23, 1995

cc:   Andrew D. Wickwire, Esq.
      Russell F. Hilliard, Esq.
      Robert L. Chiesa, Esq.

24